IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS WOODS,                    )
                                 )
        Plaintiff,               )
                                 ) Civil Action No. 06-757
            v.                   ) District Judge Nora Barry Fischer
                                 ) Magistrate Judge Lisa Pupo Lenihan
SGT. ABRAMS, et al.,             )
                                 )
        Defendants.              )
                                 )
                                 )

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        It is respectfully recommended that Defendants' Motion
for Summary Judgment (doc. no. 26) be granted in part and denied in
part.  Specifically, Defendants' Motion should be granted with the
exception of Plaintiff's First Amendment retaliation claim that
Defendant Orpen conducted a retaliatory cell search on June 3,
2002, and Plaintiff's Eighth Amendment claim of excessive force by
Defendant Orpen on June 4, 2002.  Defendants did not move for
dismissal of Plaintiff's state law claims and, therefore, they
remain pending in this action.  It is further recommended that
Plaintiff's Motion for Judgment on the Pleadings (doc. no. 34) be
denied.

II.     REPORT

        Plaintiff, Thomas Woods, is an inmate currently serving
a life sentence at the State Correctional Institution at

1

Graterford, Pennsylvania.  He commenced this action against the following Defendants:  Sgt. Abrams; Lt. Gregg Mohring; Lt. Robert Stafford; Correctional Officer (CO) Frank Cole; Joan Delie, Health Care Administrator; Joe Geragi, Physician Assistant; Tom McDonough, Physician Assistant; Carol Scire, Grievance Coordinator; Philip Johnson, Superintendent; Neal Mechling, Superintendent; Thomas James, Chief Grievance Coordinator; and Jeffrey Beard, Secretary of Pennsylvania Department of Corrections (DOC).  Plaintiff alleges that Defendants violated his rights as protected by the First, Eighth and Fourteenth Amendments of the United States Constitution as well as his rights under the Constitution of the Commonwealth of Pennsylvania and Pennsylvania law.

## A. Standard of Review

Defendants have filed a Motion for Summary Judgment pursuant to Fed. Rule Civ. Proc. 56.  Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ".  .  . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.

2

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

## B. Plaintiff's Allegations

Plaintiff alleges liability against Defendants under 42 U.S.C. § 1983 and various state laws. Specifically, he alleges as

follows.  From March 13, 2001 through March 26, 2003, Plaintiff was confined at the Long Term Segregation Unit (LTSU) at the State Correctional Institution At Pittsburgh (SCIP).  The LTSU was the most restrictive of the three special units that the Pennsylvania Department of Corrections (DOC) maintained for difficult prisoners. It was reserved for the Commonwealth's most incorrigible, recalcitrant inmates.  Beard v. Banks, ___ U.S. ___, 126 S.Ct. 2572, 2576 (June 28, 2006) (internal record citations omitted). During his confinement, Plaintiff filed numerous complaints against Defendants and their co-workers.  He first claims that on April 18, 2002, Sgt. Abrams placed Plaintiff is a disciplinary cell (DC) in retaliation for Plaintiff filing grievance no. 18782 against another LTSU officer about money owed for cigarettes, a lighter and use of a cellular phone (doc. no. 28-5, p. 5).  He claims that he was taken from his administrative custody (AC) Level One status and placed in DC status in retaliation for a personal dispute between himself and another unnamed LTSU officer that happened on April 17, 2002.  He claims that he was stripped of his AC property, rights and privileges and placed in a cell with lights and a camera on 24 hours a day (doc. 32-5, p. 44).  On April 22, 2002, he had a hearing where he was cleared of any wrong doing, sent on a writ to court and returned on April 25, 2002 and placed on DC status.

On May 2, 2002, Plaintiff filed grievance no. 19915 claiming that his personal, legal and religious property was

4

confiscated from his cell B-1017 on April 18, 2002 and he was reassigned to cell A-1020 and that he needed his property for court filings (doc. no. 28-6, p.5). The grievance states that Abrams was the officer responsible for confiscating his property. Notably, he does not include any issue about being on DC status in his grievance.

On May 1, 2002, Sgt. Abrams and Sgt. Orpen moved Plaintiff to LTSU cell A-1024, which was allegedly smeared with the feces of its prior tenant, inmate Howard Lawson. The cell contained 24-hour lighting and video recording. Woods filed grievance no. 19728 alleging retaliation from Defendant Abrams (doc. no. 28-6, p. 6). The response to his grievance indicates that he was placed in the pod due to his misconduct and lack of cell availability and that Abrams checked his cell thoroughly after it was cleaned and determined that it was rust on the walls and not feces (doc. no. 28-6, p.63).

On May 13, 2002, the ceiling cracked open in cell A-1024, letting rain water in causing Plaintiff to slip and injure his shoulder. On May 14, 2002, Plaintiff was removed from cell A-1024 to cell no. B-1014. He filed Grievance No. 20410 stating that rain was coming in through his roof (doc. no. 28-6, p.24). The response indicates that an inspection located a tear in the roof rubber membrane that was temporarily repaired to stop the water leak and that a permanent repair would be completed when the weather

5

permitted (doc. no. 28-6, p.25).   Plaintiff further claims he continually was denied medical treatment for his injured shoulder in that he should have received physical therapy as noted by Dr. Falor.

Plaintiff next claims that Defendants Abrams, Orpen, Franks, Stafford and Mohring made threats of tampering with Plaintiff's food, fabricating misconduct reports, destroying his property, physical assault and other sorts of harassment.   He claims that Defendants did not follow DOC policy Inmate Abuse Allegation Monitoring Process in addressing Defendants threats.

On June 3, 2002, Plaintiff alleges that Defendant Orpen conducted a retaliatory cell search during which he planted Valium in his cell because Plaintiff filed Grievance No. 20798 against him.   Plaintiff was issued Misconduct No. 435750 for having contraband in his cell and received 90 days disciplinary time. Plaintiff raised the retaliation claim in Grievance No. 23494 but it was not specifically addressed in DOC's responses (doc. no. 28-6, pp. 35-42).

On June 4, 2002, Plaintiff claims that Defendant Orpen viciously hit him with a blackjack and dragged him while he was being taken to the LTSU exercise yard.   He claims that he was handcuffed from behind and that he received five sutures over his right eye and suffered a lump on his head and abrasions.   This claim was thoroughly investigated by the Office of Professional

Responsibility who issued a lengthy report with their conclusions (doc. 28-3, pp. 1-126).

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  Rode, 845 F.2d at 1207.

The issues at bar concern whether Defendants have violated any of Plaintiff's constitutional rights.  His claims are

7

discussed separately below.

## D. The First Amendment

Several of the Plaintiff's allegations invoke the protections of the First Amendment, which provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.

### 1. <u>Access to Courts</u>

Plaintiff alleges that Defendants violated his right to access to the courts by confiscating his legal materials.  In <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint:  1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  <u>Christopher</u>, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if

8

the underlying claim was being pursued independently.  Christopher,
536 U.S. at 417.   In this regard, the statement must be
sufficiently specific to ensure that the district court can
ascertain that the claim is not frivolous and that the "the
'arguable' nature of the underlying claim is more than hope."  *Id*.
The second requirement requires a Plaintiff to clearly allege in
the Complaint the official acts that frustrated the underlying
litigation.  Third, a Plaintiff must specifically identify a remedy
that may be awarded as recompense in a denial-of-access case that
would not be available in any other future litigation.  *Id*. at 414.

It is clear from reviewing Plaintiff's Complaint that he
has failed to allege a viable claim for denial of access to the
courts.   In this regard, the only relevant allegation is his
assertion that some of his legal property, *e.g.*, a Black's Law
Dictionary, a copy of the Pennsylvania Rules of Court, a copy of
the Federal Rules of Civil Procedure, and a Prisoners Self Help
Litigation Manual (doc. no. 32, p. 46), was illegally confiscated.
However, Plaintiff does not identify what court action was affected
and what remedy may be awarded as recompense that would not be
available in any other future litigation.

In addition, if Plaintiff could show that the destruction
of his property amounted to "willful misconduct," he could pursue
a claim in the Pennsylvania state courts via the Pennsylvania
Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8550,
which contains a waiver of the defense of sovereign immunity for
willful misconduct.  *See, e.g.*, Acosta v. McGrady, 1999 WL 158471,

9

at *6 (E.D. Pa. Mar. 22, 1999) (recognizing that DOC grievance procedure and the remedy provided for under 42 Pa. Cons. Stat. § 8550 satisfied the requirements of post-deprivation due process); Reid v. Seville, 1996 WL 421901, at *4 (E.D. Pa. July 19, 1996) (same); Hodgin v. Agents of Montgomery County, 619 F. Supp. 1550 (E.D. Pa. 1985) (recognizing that Commonwealth Defendants are not shielded by sovereign immunity for their intentional misconduct). Thus, he has another remedy available.  Consequently, Defendants' Motion for Summary Judgment should be granted as to this claim.

## 2. Retaliation

Plaintiff also claims that the Defendants retaliated against him by:  removing him from his AC cell on April 18, 2002 and placing him in a disciplinary cell (DC); placing him in cell A-1024 from May 1, 2002 until May 14, 2002; and searching his cell on June 3, 2002 and planting contraband for which he was issued a misconduct and received DC time.  These claims also invoke the protections of the First Amendment.  In this regard, it is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983.  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things:  (1) the conduct which led to the alleged retaliation was constitutionally protected; (2)

that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a

11

retaliation claim.  *See* <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); <u>Woods</u>, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct).  Plaintiff claims that the retaliation was the result of his filing grievances and complaints against LTSU officers.  Thus, he had alleged the first element of a retaliation claim.

With respect to the second element, the Plaintiff alleges that he was stripped of his AC privileges, moved to a feces infested cell, and received a false misconduct report for contraband that Defendant Abrams planted in his cell.  This Court may conclude that he has alleged the second element of a retaliation claim, *i.e.*, that he was subjected to "adverse" action. *See* <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); <u>Allah</u>, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

It is the third element that limits Plaintiff's recovery. The third element requires the Plaintiff to show that the protected activity was a substantial motivating factor in the state actor's

decision to take the adverse action.  This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred.  <u>Tighe v. Wall</u>, 100 F.3d 41, 42 (5th Cir. 1996); <u>Goff v. Burton</u>, 91 F.3d 1188 (8th Cir. 1996); <u>Pride v. Peters</u>, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).  It is Plaintiff's burden to prove that the Defendants were motivated by retaliation.  <u>Hannon v. Speck</u>, 1988 WL 131367, at *4 (E. D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was as he alleged.") (internal quotes and citation omitted), *aff'd*, 888 F.2d 1380 (3d Cir. 1989) (Table).

     With respect to the first claim, *i.e.*, that he was arbitrarily moved to DC custody on April 18, 2002, the record evidence does not establish the essential third element, *i.e.*, that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  In this regard, DOC records indicate that Plaintiff was moved to another cell because of a level change and that the property he was allowed to possess changed as a result (doc. no. 28-6, p.2).  Plaintiff has not submitted any evidence to refute this.  Because this demonstrates that the state actors would have taken the same action without the unconstitutional factors, Plaintiff can not prevail on his first retaliation claim and Defendants are entitled to summary

13

judgment as to this claim.

In his second claim, he alleges that Defendant Abrams placed him in cell A-1024, which was covered in feces, in retaliation for Plaintiff writing Sgt. Abrams twice complaining about his treatment of Plaintiff, *i.e.*, cameras, lights, punishment without a write-up, then punishment before a hearing (doc. no. 19727).  Plaintiff did not attach these alleged writings in response to Defendants' Motion for Summary Judgment.  Thus, he has not demonstrated any causation between his alleged writing to Abrams and Abrams' actions in placing him a filthy cell.  Moreover, the record evidence provides that Plaintiff was placed in cell A-1024 due to his misconduct and lack of cell availability (doc. no. 28-6, p.63).  Thus, Defendants are entitled to summary judgment as to Plaintiff's second retaliation claim.

Plaintiff's third retaliation claim is that Defendant Orpen conducted an illegal cell search on June 3, 2002 and placed Valium in his cell and then issued him a false misconduct report. He claims that Defendant Orpen retaliated against him for filing Grievance No. 20798 wherein he alleged that Orpen and other LTSU officers were threatening him.  This Grievance was filed May 17, 2002 (doc. 32-4, p. 12).  Temporal proximity between the protected activity and the alleged retaliatory action can suggest causation. *See* <u>Rauser</u>, 241 F.3d at 334.  Defendant Orpen has offered no evidence to prove that he would have taken the same action without

14

the unconstitutional factors.

Here, based on the record evidence, a jury could find that Orpen took an adverse action against the Plaintiff that would deter a person of ordinary firmness from continuing to exercise his rights under the First Amendment, that Orpen's adverse action was motivated by Plaintiff's protected conduct, that Orpen failed to show that he would have taken the same action in the absence of the protected activity and that Orpen's conduct was the proximate cause of injuries to the Plaintiff.  Thus, Plaintiff is entitled to go forward with this claim and summary judgment should be denied.

### E. The Eighth Amendment

Plaintiff makes several allegations that invoke liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.  In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832

15

(1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns.  A prison official violates the Eighth Amendment only when two requirements are met.  The inmate must show that:  1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk.  *Id.*, 511 U.S. at 834.  The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.*  In determining whether a prisoner has alleged a risk that is  objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.  <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993).  The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.

The Supreme Court clarified this deliberate indifference standard in <u>Farmer</u> as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of

the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

### 1. Verbal Harassment

Plaintiff claims that Defendants verbally harassed and threatened him.  It has long been settled that mere threats and harassment do not amount to a constitutional violation.  *See* Adams v. Leaman, 156 F.3d 1228 (table), 1998 WL 466483 (6th Cir. 1998) ("It is well settled that mere threats, standing alone, do not rise to the level of a constitutional violation."); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.) (mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations), *cert. denied*, 464 U.S. 998 (1983); Wilson v. Horn, 971 F. Supp. 943 (E.D. Pa. 1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), *aff'd*, 142 F.3d 430 (Table) (3d Cir. 1998).[1]  Moreover, there is no violation of a constitutional right

---

1.  *See also* Burkholder v. Newton, 116 Fed. Appx. 358, 360 (3d Cir. 2004) (nonprecedential).

even if Defendants are alleged to have made a racially disparaging remark. <u>Morgan v. Ward</u>, 699 F. Supp. 1025 (N.D.N.Y. 1988) (use of racial slurs do not support a claim under the Eighth Amendment); <u>Williams v. Pecchio</u>, 543 F. Supp. 878 (W.D.N.Y. 1982) (verbal harassment, including the use of the term "nigger," does not support a section 1983 claim).

No matter, then, how reprehensible the conduct alleged in the complaint may be, such conduct, if as alleged, is not violative of rights secured to the Plaintiff under the Constitution or the laws of the United States.  Accordingly, Defendants are entitled to summary judgment as to this claim.

## 2. <u>Conditions of Confinement</u>

Plaintiff alleges that the conditions of his confinement in the LTSU violated the Eighth Amendment prohibition against cruel and unusual punishment.  With the exception of his confinement in cell A-1024, Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement in the LTSU deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety.  Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. <u>Hutto v. Finney</u>, 437 U.S. 678, 686 (1978); <u>Spaight v. Coughlin</u>, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), *cert. denied*, 117

S.Ct. 972 (1997); <u>Young v. Quinlan</u>, 960 F.2d 351, 363 (3d Cir. 1992); <u>Sheley v. Dugger</u>, 833 F.2d 1420, 1428-29 (11th Cir. 1987); <u>Gibson v. Lynch</u>, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing <u>Hutto</u>), *cert. denied*, 462 U.S. 1137 (1983).

The Constitution does not mandate comfortable prisons. <u>Rhodes</u>, 452 U.S. at 349.  Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id. Accord* <u>Griffin v. Vaughn</u>, 112 F.3d. 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

Notwithstanding, Plaintiff does allege that his cell A-1024 was covered in feces when he was placed there on May 1, 2002. Although Defendants have denied this allegation, he has submitted the affidavit of the prior inmate, Howard Lawson, who admits that he flooded the toilet on April 30, 2002 and smeared feces on the walls throughout the cell (doc. no. 32-1, p. 27).   Such allegations, standing alone, may assert an Eighth Amendment claim. *See, e.g.*, <u>Johnson v. Pelker</u>, 891 F.2d 136, 139-40 (7th Cir. 1989) (prisoner held for three days in segregation cell allegedly smeared with human feces and having no running water); <u>Jackson v. Duckworth</u>, 955 F.2d 21, 22 (7th Cir. 1992) (prisoner held in cell

19

that allegedly was filthy and smelled of human waste, lacked adequate heating, contained dirty bedding, and had rusted out toilets, no toilet paper, and black worms in the drinking water); Isby v. Clark, 100 F.3d 502, 505-06 (7th Cir. 1996) (prisoner held in segregation cell that allegedly was "filthy, with dried blood, feces, urine and food on the walls").

However, here the record shows that Plaintiff was issued cleaning supplies on May 2, 2002, the day after has was placed in cell A-1024 (doc. no. 28-6, p. 63). The length of exposure to unsanitary conditions is one consideration in evaluating the objective prong of the Eighth amendment. See Hutto v. Finney, 437 U.S. 678, 687 (1978) (noting that unpleasant conditions of confinement "might be tolerable for a few days and intolerably cruel for weeks and months"); Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994) ("the intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies would make them tolerable."). Thus the record shows that Plaintiff was not required to remain in an unsanitary condition for an inordinate period of time.

The Superior Court of Pennsylvania recently rejected a similar Eighth Amendment claim regarding the LTSU wherein it made the following observations.

> The basic conditions in this most restrictive of units designed for the most severe behavioral problems in the prison population are, perhaps not surprisingly, very

unpleasant.   There is a regular problem of
feces throwing and the accompanying stench,
which has been recently only partially
corrected by a modification of the cell doors.
Another practice of stopping up toilets until
they run over and flood the cells, is not
uncommon and can lead to similar unsanitary
conditions.   Although the institution has a
specialized team to go in and clean and
sanitize after such incidents, the evidence
suggests that there are sometimes periods of
delay during which the inmates are residing
and even eating their meals within the sight
and smell of human waste.   There was no
evidence, however, that inmates['] food itself
was contaminated with this waste.   Although
petitioners allege that the staff actively
encourage the throwing of feces, the evidence
did not support this allegation.

As noted above, the inmates in the LTSU
have 23 hours of solitary confinement in their
cells per day with one hour a day in the yard.
There is considerable noise described as
banging and screaming on the unit at all hours
of the day and night and the lights are left
on twenty-four hours a day.   Many of the
inmates are described as suffering from mental
and emotional illnesses, although the severely
mentally ill are apparently housed in a
separate unit. This Court had the opportunity
to visit the Psychiatric Unit which is staffed
with a full-time nurse, and the inmates appear
well managed and orderly.   It is not clear to
this Court whether the mental and emotional
conditions demonstrated in the LTSU contribute
or cause the extreme behavioral issues that
landed these inmates in the LTSU or whether
those types of conditions are in part caused
by long periods of solitary confinement in
such a unit.

There have been problems with the heat
during which the cells have been quite cold
during the winter months, although extra
blankets appear to have been available at
those times. ...   At times, pepper spray is
used to control unruly inmates, and the spray

lingers in the air, causing problems for the surrounding inmates.

. . .

To punish the LTSU inmates for misconducts, they are sometimes put in "alternate housing," which involves being put into a cell without the inmate's property or clothing, with a smock and no underclothing to wear, a mattress and a "security blanket." According to the LTSU policy, where an inmate's misconduct has involved the use of the mattress, such as using it to create a barricade or destroying it for any purpose, this alternate housing would exclude a mattress and require the inmate to sleep on a metal bed frame or on the concrete slab. ... While in this alternate housing, if the inmate's misconduct has involved misuse of food or utensils (cups or containers have at times been used to collect fluids or feces to use against staff or other inmates), the inmate will be given only a "nutritional food loaf" to eat during the duration of the punishment, which is a frozen concoction of rice and some sort of starch. This is done only for short durations until the inmate is brought into conformity and the process is done under medical supervision. The water is also controlled from outside the cell during these punishments to avoid the inmate causing a flood, although water to drink is apparently made available every few hours. ... In one instance, Mr. Rivera testified to having been put in a "four-point restraint" for a misconduct, which constituted being chained to a metal bed frame by all four limbs, during which restraint he was unable to use the bathroom and was forced to soil himself with urine and feces. Prison officials noted this was after he attacked a guard and had to be forcefully removed from his cell.

. . . A counselor is available on the unit once a month, but must share time with all the inmates and there is no privacy for counseling. . . . There is a system of inmate

22

> reviews which includes monthly reviews by the
> Unit Management Team and quarterly reviews by
> a Program Review Committee.  These reviews, in
> addition to the established grievance
> procedures, provide opportunities for the
> inmates to discuss problems and grievances
> that they might have with the conditions of
> their confinement as well as to have their
> behavioral status reviewed and possibly some
> of their disciplinary custody time set aside.

Rivera v. Pennsylvania Dept. of Corrections  837 A.2d 525, 530-532

(Pa. Super. 2003).

Like Rivera, Plaintiff has failed to evidence conditions

that will satisfy the objective component of an Eighth Amendment

claim.  *Accord* Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996)

(holding that inmate's confinement in a cell for four days with an

overflowing toilet, during which time he was made to endure the

stench of his own feces and urine, did not rise to the level of an

Eighth Amendment violation"); Davis v. Scott, 157 F.3d 1003, 1004

(5th Cir. 1998) (inmate being placed in cell with blood on the

walls and excretion on the floors for three days did not meet the

objective component of the Eighth Amendment, especially in view of

fact that cleaning supplies were made available to him).

Consequently, Defendants are entitled to summary judgment as to

this claim.

Plaintiff also alleges that his confinement in cell A-

1024 constituted cruel and unusual punishment because the roof

leaked.  Plaintiff has not submitted any evidence to show that

Defendants were aware of the leak in the ceiling of cell A-1024

23

except the Declaration of inmate Howard Lawson who states that he complained about it on or after April 28, 2002.  When Plaintiff submitted his grievance on May 13, 2002, it was temporarily repaired that day (doc. no. 28-6, pp. 25, 27) and Plaintiff was moved out the next day.

### 3. Excessive Force

Next, Plaintiff alleges that Defendant Orpen used excessive force on June 4, 2002 when he attacked him with a black jack and dragged him by a tether.  The Cruel and Unusual Punishments Clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers.  *See* Whitley v. Albers, 475 U.S. 312, 318-19 (1986).  What is required to prove an Eighth Amendment violation "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992). In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Factors relevant to this inquiry include:  the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (citations omitted).  The absence of serious injury is a

24

relevant, but not dispositive, additional factor to be considered in the subjective analysis.  *Id*.

Here, Plaintiff received five sutures to close the wounds in his face and bruising and swelling was noted on his head and legs.  This is like the situation in <u>Brooks v. Kyler</u>, 204 F.3d 102 (3d Cir. 2000) where the plaintiff claimed that the defendants repeatedly punched him in the head, stomped on his back and neck, slammed him into a wall, choked him, threatened him, and nearly rendered him unconscious, all while he was handcuffed to a waist restraint belt and, at some points, restrained by leg shackles. Here, like Brooks, Plaintiff suffered verifiable physical injuries consisting of lacerations and abrasions.

As a result of Plaintiff's allegation, the Office of Professional Responsibility investigated the alleged assault and determined that Plaintiff had falsified his complaint against Defendant Orpen and that he had hurt himself exercising in his cell (doc. no. 28-3, Appendix B).  In support of their conclusion, they rely on the LTSU officers statements and a handwritten note by Plaintiff wherein he claims that he is getting Orpen (doc. no. 28-3, p. 56).

While this report with its supporting evidence certainly could lead a juror to conclude that Plaintiff fabricated the alleged abuse, Plaintiff's injuries along with the affidavits submitted by inmate witnesses (doc. no. 32, pp. 29-37) could also

lead a reasonable juror to conclude that Orpen did use excessive force on June 4, 2002.  Therefore, Defendants' Motion for Summary Judgment should be denied with respect to the Plaintiff's excessive force claim.

4. <u>Failure to Provide Medical Treatment</u>

Plaintiff also asserts an Eighth Amendment claim alleging failure to provide medical treatment for his shoulder injury that he allegedly sustained when he fell in cell A-1024 due to the leaky roof.  To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements:  1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need.  <u>Gamble v. Estelle</u>, 439 U.S. 897 (1978).

The first showing requires the court to <u>objectively</u> determine whether the medical need was "sufficiently serious."  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable

26

state of mind.   Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Here, Plaintiff has received extensive medical treatment for his concerns.   Consequently, Plaintiff has alleged the existence of serious medical needs.

Notwithstanding, Plaintiff has failed to demonstrate that the Defendants were deliberately indifferent to his needs.   The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action.  Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997).   The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference.   Farmer v. Brennan, 511 U.S. at 837.   An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*.  Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment.  Medical malpractice

may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 185 (3d Cir. 1993); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993).

Plaintiff's own allegations and extensive documents attached to his Complaint reveal that the Defendants acted responsibly in attending to his medical needs. Had the Plaintiff not been incarcerated, it is highly questionable whether he would have received any medical care, let alone the abundance of prompt medical care he did receive. The record evidence shows that he received continual medical treatment, including pain medication, muscle relaxers, physical therapy, numerous X-rays, blood work, a cat-scan, and outside examination by specialists (doc. no. 28-2, pp. 1-149). There simply is nothing to suggest that any of the Defendants were deliberately indifferent.

While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's

28

choice." <u>Layne v. Vinzant</u>, 657 F.2d 468, 473 (1st Cir. 1981).
Mere disagreements over medical judgment do not state Eighth
Amendment claims as there are typically several acceptable ways to
treat an illness. <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir.
1990) (citations omitted). *Accord* <u>Young v. Quinlan</u>, 960 F.2d 351,
358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison
personnel over the exercise of medical judgment does not state
claim for relief under section 1983).

Taken as true, Plaintiff's allegations and the record
evidence simply do not show that any of the Defendants acted with
deliberate indifference to any serious medical needs for purposes
of imposing liability under the Eighth Amendment's prohibition
against cruel and unusual punishment. Specifically, there is
nothing that suggests that Defendants knew that Plaintiff faced a
substantial risk of serious harm and disregarded that risk by
failing to take reasonable measures to abate it. Thus, Defendants
are entitled to summary judgment with respect to this claim.

### F. Fourteenth Amendment

Plaintiff also claims that Defendants violated his rights
as protected by the Fourteenth Amendment, which prohibits the state
from depriving an individual of a constitutionally protected
interest without due process of law. To state a claim for relief,
a plaintiff must set forth facts that demonstrate that he had a
protected liberty interest that was impaired by the defendants

actions.   Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).

### 1. Conditions of Confinement

Plaintiff first claims that defendants violated his rights by arbitrarily moving him to different cells within the LTSU.  Resolution of this claim is dictated by referring to the United States Supreme Court's opinion in Sandin v. Conner, 515 U.S. 472 (1995).  In Sandin, the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees.  Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 483 (emphasis added).

Here, Plaintiff already was housed in the LTSU, which is a disciplinary housing unit for the most incorrigible prisoners.  Changes from one cell to another hardly can be found to be an atypical and significant hardship in relation to the ordinary incidents of his prison sentence.  *Cf*. Meachum v. Fano, 427 U.S. 215 (1976) (holding that a prisoner has no liberty interest in the place where he is confined); Johnson v. Hill, 910 F.Supp. 218, 220 (E. D. Pa. 1996) (holding that, absent a state-created liberty interest that does not exist in Pennsylvania, prisoner placement is

a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit). Accordingly, Defendants are entitled to summary judgment as to this claim.[2]

## 2. False Misconduct Reports

Plaintiff also asserts that Defendants violated his constitutional rights by filing a false misconduct report. A prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988). In other words, the mere filing of false charges against an inmate does not constitute a per se constitutional violation. Id. Before the Supreme Court handed down its opinion in Sandin, the federal courts had determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation only when such charges were not subsequently reviewed in a hearing. Id. at 952 (an allegation that a prison guard planted false evidence fails to state a claim where the

---

2    In Hewitt v. Helms, 459 U.S. 460, 472 (1983), the Supreme Court held that a state regulation can create a liberty interest "through the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates." While Sandin overruled much of Hewitt, even under this analysis, it is clear that DOC has not conferred upon Pennsylvania LTSU inmates a liberty interest in the cell of their choice.  See LTSU policy attached to Plaintiff's Brief, doc. no. 32-2, pp. 24-25.

procedural due process protections as required in Wolff v. McDonnell are provided) (citation omitted). Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983. *Accord* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988); McClean v. Seclor, 876 F. Supp. 695 (E.D. Pa. 1995).

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing false reports. Thus, it is unlikely that the filing of false charges, even in the absence of a hearing, would state a constitutional claim on the facts before this Court. *See* Strong v. Ford, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life).

### 3. Failure to Follow DOC Policy

Plaintiff also alleges that Defendants violated his due process rights by failing to follow DOC policy. Plaintiff misunderstands his due process rights. Federal and state regulations in and of themselves do not create a liberty interest in that procedure. *See, e.g.*, <u>Hewitt v. Helms</u>, 459 U.S. at 471 (mere fact of careful procedural structure to regulate use of administrative segregation does not indicate existence of protected liberty interest); <u>McLaurin v. Morton</u>, 48 F.3d 944, 947 (6th Cir. 1995) (mere procedures do not create any substantive liberty interest, even when phrased in mandatory language); <u>Culbert v. Young</u>, 834 F.2d 624, 628 (7th Cir. 1987) (the adoption of mere procedural guidelines does not give rise to a liberty interest), *cert. denied*, 485 U.S. 990 (1988); <u>McGuire v. Forr</u>, 1996 WL 131130 (E. D. Pa. Mar. 21, 1996) (holding that inmate grievance procedures, in themselves, do not confer a liberty interest protected by the due process clause in the inmate grievance procedures), *aff'd*, 101 F.3d 691 (3d Cir. 1996). Thus, failure to follow DOC policy does not, in and of itself, result in a violation of due process.

### 4. <u>Loss of the Property</u>

Plaintiff's final claim asserts liability for confiscation/destruction of his property as a result of cell searches and transfers. Ordinarily, the concept of "due process" requires some kind of hearing <u>before</u> the state can deprive a person

of a protected interest.  <u>Zinerman v. Burch</u>, 494 U.S. 113, 126 (1990) (collecting cases).  However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place.  Thus, in <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), the Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy.  In <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), the Supreme Court extended the rule in <u>Parratt</u> to apply to intentional acts by state actors.

Plaintiff's allegations of confiscated and missing property fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983 because he had an adequate post-deprivation remedy available to protect his due process rights through the DOC administrative grievance procedures.  In this regard, DOC Policy Statement No. DC-ADM 804-1 contains the "Consolidated Inmate Grievance Review System" for inmates incarcerated in Pennsylvania state correctional institutions.  The purpose of the grievance system is to establish policy and to insure that inmates have an avenue through which resolution of specific problems can be sought. DC-ADM 804 ¶ II.  The DOC grievance system provides three levels of review:  1) initial review by the Grievance Coordinator; 2) appeal

34

of initial review to the Facility Manager or the Community Corrections Regional Director; and 3) final appeal to the Central Office Review Committee (CORC).

In Hudson, 468 U.S. at 536 n.15, the Supreme Court noted that an inmate grievance procedure would provide a meaningful post-deprivation remedy if available.[3]   The federal courts in Pennsylvania repeatedly have held that DOC's grievance procedure is an adequate post-deprivation remedy for purposes of protecting due process rights.  See Robinson v. Ridge, 996 F. Supp. 447, 450 n.4 (E.D. Pa. 1997); Pritchard v. Ridge, 1997 WL 907564, at *2 (E.D. Pa. July 7, 1997), aff'd, 149 F.3d 1165 (3d Cir. 1998).   A plaintiff's failure to avail himself of such remedy does not affect its adequacy as a post-deprivation remedy.  Ramos v. Vaughn, 1995 WL 386573, at *3 (E.D. Pa. June 27, 1995) (plaintiff did not file a grievance with respect to his claim of loss of property), aff'd, 85 F.3d 612 (3d Cir. 1996) (Table).[4]

Here, Plaintiff had available a grievance procedure through which he raised his claim of damaged property.  The fact

---

3.   Apparently, in Hudson, the grievance procedures were implemented in 1982, after the unauthorized taking, which occurred in 1981 and, therefore, such procedures were unavailable to the petitioner in that case.

4  See also Tillman v. Lebanon County Corr. Facility, 221 F.3d 410 (3d Cir. 2000) (where the Court of Appeals for the Third Circuit found that a county prison grievance procedure provided an adequate post-deprivation remedy, thereby satisfying due process).

that he prisoner was not successful in his grievance pursuit does not undermine the procedure's adequacy as a post-deprivation remedy. *See, e.g.*, <u>Austin v. Lehman</u>, 893 F. Supp. 448, 454 (E.D. Pa. 1995). Thus, Plaintiff's claim concerning confiscated property fails as a matter of law to state a constitutional violation as required under 42 U.S.C. § 1983. Accordingly, Defendants are entitled to summary judgment as to this claim.

III.    <u>**CONCLUSION**</u>

        For the reasons set forth above, it is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 26) be granted in part and denied in part. Specifically, Defendants' Motion should be granted with the exception of Plaintiff's First Amendment retaliation claim that Defendant Orpen conducted a retaliatory cell search on June 3, 2002, and Plaintiff's Eighth Amendment claim of excessive force by Defendant Orpen on June 4, 2002. Defendants did not move for dismissal of Plaintiff's state law claims and, therefore, they remain pending in this action. It is further recommended that Plaintiff's Motion for Judgment on the Pleadings (doc. no. 34) be denied.

        In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to

respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


Dated:     August 29, 2007          _____
                                    Lisa Pupo Lenihan
                                    United States Magistrate Judge


cc:        The Honorable Nora Barry Fischer
           United States District Judge

           Thomas E. Woods
           DE-4522
           SCI-Camp Hill
           PO Box 200
           Camp Hill, PA 17001-0200

           Counsel of Record